**Mary E. THOMAS, Plaintiff-Appellant,**

v.

**Richard SCHWEIKER, Secretary, Health and Human Services, Defendant-Appellee.**

No. 81–1333
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 4, 1982.

---

Dick Alcala, San Angelo, Tex., for plaintiff-appellant.

Clinton E. Averitte, Asst. U. S. Atty., Lubbock, Tex., for defendant-appellee.

Before CLARK, Chief Judge, RUBIN and SAM D. JOHNSON, Circuit Judges.

PER CURIAM:

Mary E. Thomas appeals a judgment of the district court affirming the Secretary of Health and Human Services determination that she is ineligible for supplemental security income benefits. Thomas has no quarrel with the Secretary's conclusion that, despite her illnesses, she has the strength to perform sustained sedentary work. She asserts that the Secretary's error was in failing to appreciate that her respiratory affliction precludes her from taking those sedentary jobs which demand a tolerance for dust, heat, and fumes. We agree with Thomas. Accordingly, we reverse the judgment of the district court and remand this case with instructions that it be returned to the Secretary for further proceedings consistent with this opinion.

## I.

There is no dispute over the essential facts. Thomas is forty-eight years old, has a sixth grade education, and no vocational skills. Though in years past she was employed as a domestic, she has since mid-1979 not engaged in work beyond maintaining a home for her two minor children. Her ailments are tied to her obesity—at 5'2" she weighs in excess of 240 pounds—and her smoking habit. Thomas has been hospitalized at least twice since July 1979; her attending physicians have consistently diagnosed chronic respiratory impairments. Thomas first applied for supplemental security income disability benefits in August 1979.[1] Her application was denied, both on initial review and on reconsideration, after a physician and a disability examiner evaluated the evidence and determined that she is not disabled within the meaning of section 1614 of the Social Security Act (the Act), 42 U.S.C. § 1382c. She then requested and received a hearing de novo before an administrative law judge (ALJ) of the Social Security Administration. The ALJ found that, although Thomas cannot return to her previous employment, she retains the capability to perform sedentary work. The ALJ took administrative notice of Social Security Administration regulations which indicate that work exists in the national economy for people of Thomas' age, education, work experience, and limitation to sedentary work, and concluded on the strength of these that Thomas is not disabled.

Thomas sought review of the ALJ's recommended decision before the Appeals Council. Review was denied, making the decision of the ALJ the final ruling of the Secretary of Health and Human Services. On appeal to the district court under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), the Secretary's decision was upheld as supported by substantial evidence. This appeal followed.

## II.

### A.

We note at the outset the confined sphere within which we may conduct our review. Section 205(g) restricts our review, as it restricted that of the district court,[2] to determining whether the record as a whole contains substantial evidence supporting the Secretary's findings. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 1427, 28

1. Thomas also applied for a period of disability and disability insurance benefits under §§ 216(i) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) & 423. Title II disability insurance benefits are designed to provide financial assistance to those whose employment is interrupted or prematurely terminated by incapacitating illness or injury. *Mathews v. DeCastro*, 429 U.S. 181, 97 S.Ct. 431, 434 n.6, 50 L.Ed.2d 389 (1976) (citations omitted). As a wage insurance program, its benefits are limited to claimants whose disabilities occurred while they were in "insured status." Claimants hold insured status over that period in which they have accrued 20 quarters of social security coverage, as defined by § 213(a)(2), 42 U.S.C. § 413(a)(2), out of the last 40 quarters. Sections 213(i)(3) and 223(c)(1), 42 U.S.C. §§ 416(i)(3) & 423(c)(1). Disabilities occurring after insured status has lapsed do not provide a basis for payment of disability insurance benefits under Title II. *DeMandre v. Califano*, 591 F.2d 1088 (5th Cir.), cert. denied, 444 U.S. 952, 100 S.Ct. 428, 62 L.Ed.2d 323 (1979).

The ALJ found, on examination of Thomas' employment records, that she last met the insured status requirement on December 31, 1978. Because she claimed that her disability began on July 12, 1979, after her insured status had lapsed, the ALJ denied her claim for a period of disability and disability insurance benefits. Thomas did not appeal this determination.

Thomas' ineligibility for benefits under Title II does not affect her eligibility for supplemental security income disability benefits. The latter, authorized by Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, provide assistance to the disabled needy, without regard to the claimant's history of coverage under the Act. Its qualifying financial tests are, rather, income and resource tests. Section 1611(a), 42 U.S.C. § 1382(a). *Rosario v. Harris*, 492 F.Supp. 414 (D.N.J.1980); *Patterson v. Califano*, 475 F.Supp. 578 (E.D.Va.1979).

2. Where, as here, appeal is taken from a district court's rendition of summary judgment in favor of the Secretary, the circuit court's review must be made independently of the determinations made by the district court, and without the assumption that the district court acted correctly. *Olson v. Schweiker*, 663 F.2d 593 (5th Cir. 1981).

L.Ed.2d 842 (1971); *Millet v. Schweiker*, 662 F.2d 1199 (5th Cir. 1981). Substantial evidence is simply such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Anderson v. Schweiker*, 651 F.2d 306, 308 (5th Cir. 1981).

■ As limited as the statutory scope of review may be, the parties have in this case narrowed it still further. Thomas raises only a single issue on appeal. She claims that the same proof which showed her inability to return to her previous employment, because of a reduced capacity for sustained exertion, also shows that she is unable to do certain types of work within her exertional capacity because she cannot tolerate the environment in which the work must be performed. She argues, in essence, that the Secretary failed to meet his burden of proving that there is other substantial gainful employment activity in the economy which she can perform.[3] Her contention requires a review of the record developed at the administrative hearing.

### B.

At her hearing, Thomas testified that she has difficulty in breathing, coughs and chokes often, and has asthmatic attacks of five to fifteen minutes duration several times a day. She cooks, grocery shops, and does housework, all the while interspersing her periods of activity with frequent rest breaks, and at one point attempted to paint her apartment. The latter effort resulted in her January 1980 hospitalization for asthmatic bronchitis aggravated by toxic fumes.

Medical evidence was also introduced at the hearing. In substance, it indicated that three physicians had found Thomas to be afflicted with chest pains, shortness of breath, a nonproductive cough, and bilateral and symmetric inspiratory and expiratory wheezes. Two of the doctors diagnosed chronic asthmatic bronchitis; the third found aggravated emphysema. Certain clinical findings pointed to the possibility of an incipient heart impairment; those symptoms did not regularly appear, however, and only one of the three doctors diagnosed pulmonary disease.

The ALJ found that Thomas is afflicted with asthmatic bronchitis, obstructive pulmonary disease, and obesity. He found not wholly credible her testimony as to the severity of her pain and functional limitations; it appears that this discreditation rested at least in part on Thomas' concurrent testimony that she is able to keep house, albeit at a slow pace. The ALJ concluded that, despite the opinions of two of Thomas' treating physicians that she is completely disabled, both the clinical findings underlying the medical opinions and Thomas' own testimony indicated that while Thomas cannot return to her previous employment as a domestic, she is capable of maintaining sustained exertion equivalent to that required of sedentary work.[4]

■ The conclusion that Thomas is capable of sedentary work did not, of itself, dictate a determination that she is not disabled within the meaning of the Social Se-

---

**3.** The burden of proof shifts several times en route to a final determination of the issue of disability under the Act. Initially, it rests on the claimant who must show the existence of a disability by proving that she is unable to perform her previous work. Section 1614(a)(3)(B), 42 U.S.C. § 1382c(a)(3)(B). Her success shifts the burden of proof to the Secretary, who must convince the fact finder that there is other substantial gainful employment in the economy which the claimant can perform. If the Secretary does so, the ball is back in the claimant's court: she must show her inability to perform those jobs. *Millet*, at 1201; *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir. 1981). Thomas here claims that the process went awry at the second stage, when the Secre-

tary failed to consider the environmental, as well as the exertional, illness-induced limitations on the type of work which she can perform.

**4.** 20 C.F.R. § 404.1510(d) defines "sedentary" work as that which entails lifting 10 pounds maximum and occasionally lifting or carrying such articles as dockets (*e.g.*, files), ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

curity Act, 42 U.S.C. 1382c(a)(3).[5] The Act provides that a determination of disability can be made only upon consideration of whether the claimant's age, education, and work experience, combined with her reduced functional abilities, would make her ineligible for any other kind of substantial gainful work existing in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The ALJ took these additional factors into consideration by reference to the Secretary's Medical-Vocational Guidelines, 20 C.F.R. Subpart P, App. 2 §§ 200.00–204.00 (1980).

The Medical-Vocational Guidelines set forth rules governing disability determinations in commonly-encountered patterns of functional and vocational limitations. The rules are organized in three Tables, each dealing with a different level of residual exertional capacity. The separate rules consider varying combinations of age ranges, educational levels attained, and job skills exemplified by previous employment, and direct, based on those four factors, a finding of disability or nondisability. *See Salinas v. Schweiker*, 662 F.2d 345 (5th Cir. 1981); *Perez v. Schweiker*, 653 F.2d 997 (5th Cir. 1981). Table 1 provides the rules for claimants found capable of performing sedentary work as defined by 20 C.F.R. § 404.1510(b). Based on his findings that

Thomas, under fifty years of age, was a younger individual as defined by 20 C.F.R. § 404.1506(b), that she had a limited education as defined by 20 C.F.R. § 404.1507(d) and that she had been an unskilled worker as defined by 20 C.F.R. § 404.1511(b), the ALJ determined that Rule 201.18 of Table 1 applied and directed a conclusion of "not disabled."[6]

■ Thomas does not dispute the four findings of residual exertional capacity, age, education, and job skill level on which the ALJ's finding of nondisability was predicated. Nor does she argue that reliance on the guidelines is insufficient to satisfy the Secretary's burden of proof where the four factors on which they are based coincide precisely with the considerations relevant to disability presented by the claimant's situation.[7] Rather, she argues that the ALJ erred in defining her disability as one which manifested itself *only* in limitations on her exertional capacity. Thomas contends that the very nature of her ailment, chronic impairments of her respiratory processes, imposes, *in addition to* exertional limitations, restrictions on the environment in which she is able to work. In other words, although she agrees that she is able to do sedentary work, she asserts that she can perform sedentary work only in an environ-

5. That section provides, in pertinent part, that an individual is disabled if he is

> unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 1382c(a)(3)(A), and if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

6. Rule 201.18, found to be applicable in this case, reads as follows:

Table No. 1—Residual Functional Capacity: Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s)

| Rule | Age | Educ. | Previous Work Exper. | Decision |
| --- | --- | --- | --- | --- |
| 201.18 | [Younger individual age 45–49] | Limited or less — at least literate and able to communicate in English | [Unskilled or none] | Not Disabled |

7. This Court has recently found reliance on these regulations to be sufficient to meet the Secretary's burden of proof in situations where the guidelines coincide with all relevant factors presented by the claimant's particular factual situation. *Salinas* at 349; *accord Frady v. Harris*, 646 F.2d 143 (4th Cir. 1981); *compare Cowart v. Schweiker*, 662 F.2d 731, at 732, 736 n.1 (11th Cir. 1981) (reserving the issue).

ment free of dust, excessive heat, and toxic fumes. It is Thomas' position that application of the Guidelines is not appropriate where the considerations relevant to disability presented by the claimant's situation include a limitation not taken into account by the Guidelines, and that the environmental restriction which she claims that her ailment imposes is just such an additional limitation. We agree.

Recent opinions of this Court establish that use of the Guidelines is inappropriate where their evidentiary underpinnings do not coincide exactly with the evidence of disability appearing on the record. *Millet* at 1204; *Perez* at 1001; *accord Ferguson v. Schweiker*, 641 F.2d 243, 247 (5th Cir. 1981). The Secretary's regulations directing proper use of the Guidelines explicitly state that the Guidelines do not take into consideration nonexertional limitations on the type of work which the claimant could perform, and caution that the guidelines should not be considered determinative in, *inter alia*, situations where the nature of the claimant's ailment manifests itself in intolerance of dust and fumes. 20 C.F.R. Subpart P, App. 2 § 200.00(E) states

> Since the rules are predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs, they may not be fully applicable where the nature of an individual's impairment does not result in such limitations, e.g., . . . environmental restrictions. Environmental restrictions are those restrictions which result in inability to tolerate some physical feature(s) of work settings that occur in certain industries or types of work, e.g., an inability to tolerate dust or fumes.

> . . . . .

> (2) [W]here an individual has an impairment or combination of impairments re-

sulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this Appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in §§ 404.1505—404.1511, which will provide insight into the adjudicative weight to be accorded each factor.

Evidence submitted at the hearing before the ALJ indicated that Thomas' disabling symptoms appear or are intensified by exposure to dust, fumes, and excessive heat. The ALJ failed to address the question raised by this evidence of whether it supports a finding that Thomas' ability to work is restricted by an environmental, as well as an exertional, limitation. The hearings must be reopened and a determination must be made on this issue. If such a restriction is found to exist, the Secretary's proof of available alternate employment must take this restriction into consideration. Because the Guidelines do not include consideration of this factor, it will be necessary, if dual exertional and environmental limitations are proved, for the Secretary to offer testimony by a vocational expert on whether there exists jobs in the national economy which the claimant is capable of performing.[8] As we have stated before,

> [W]hen a claimant can perform any type of [sedentary] physical activity, adminis-

---

8. We note that the Secretary's regulations observe:

> 201.00 *Maximum sustained work capability limited to sedentary work as a result of severe medically determinable impairment(s).* (a) Most sedentary occupations fall within the skilled, semi-skilled, professional, admin-

istrative, technical, clerical, and benchwork classifications. Approximately 200 separate unskilled sedentary occupations can be identified, each representing numerous jobs in the national economy. Approximately 85 percent of these jobs are in the machine trades and benchwork occupational catego-

trative notice that jobs requiring such activities exist makes vocational expert testimony unnecessary ...; however, when a claimant can perform only limited types of [sedentary] activity, a vocational expert must be called to testify that jobs requiring only the activities which the claimant can perform exist in the national economy.

*Ferguson* at 248.

### III.

The case is remanded to the Secretary for development of findings on the extent of the environmental limitation, if any, under which Thomas would labor. If such a limitation is found, it is incumbent on the Secretary to show, through the testimony of a vocational expert, that there exists in the national economy substantial gainful employment which Thomas is capable of performing in light of all the factors contributing to her disability.

**REVERSED AND REMANDED.**

ries. These jobs (unskilled sedentary occupations) may be performed after a short demonstration or within 30 days.

20 C.F.R. Subpart P, App. 2, § 201.00(a). Machine trades and bench work by their nature often involve exposure to dust, fumes, and other suspended particulates irritating or intolerable to persons afflicted with respiratory ailments.